Geoffrey M. Trachtenberg, Bar No. 019338
Thomas M. Richardson, Bar No. 018582
Krista T. McCarthy, Bar No. 026969
**FRIEDL RICHARDSON, P.C.**
13633 North Cave Creek Road
Phoenix, Arizona 85022
(602) 553-2220
geoff@friedlrichardson.com
TMRLit@friedlrichardson.com
krista@friedlrichardson.com
*Attorneys for the Plaintiffs*

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| **PAULINE DONATTO**, *et al.*, | Case No. 2:26-cv-00101-DWL |
| Plaintiffs, | **PLAINTIFFS' MOTION TO REMAND AND MEMORANDUM OF POINTS AND AUTHORITIES** |
| vs. | |
| **GLOBAL WATER–SANTA CRUZ WATER COMPANY, INC.**, *et al.*, | |
| Defendants. | |

Plaintiffs Pauline Donatto, Bradley Follett, Linda Gagner, Jon Macernie (on behalf of himself and V.G.), John ("Jack") Podojil, Krystal Stanley, and Terry Yoshii (collectively, "Plaintiffs") hereby move this Court for an Order remanding this action to the Superior Court of Arizona in and for Pinal County for lack of federal-question jurisdiction under 28 U.S.C. § 1331. Plaintiffs further request an award of just costs and any actual expenses, including attorney fees, incurred because of Defendants' improper removal, pursuant to 28 U.S.C. § 1447(c). This Motion is based on the accompanying Memorandum of Points and Authorities, the pleadings, and papers on file.

## I. INTRODUCTION

Defendants removed this case under 28 U.S.C. § 1331 (federal-question jurisdiction), even though Plaintiffs pleaded four causes of action exclusively and expressly under Arizona law: (1) declaratory judgment regarding unduly delayed and inadequate public notification; (2) declaratory judgment regarding false and misleading public notification; (3) negligence; and (4) public nuisance. In addition, the First Amended Complaint ("FAC") (Doc. 1-8) specifically disclaims any federal cause of action and pleads only Arizona-law theories.[1] (FAC ¶¶ 290–292.)

The question here is whether any claim "arises under" federal law. None does.

Defendants' removal rests on a single premise: that because the FAC cites EPA RTCR and Tier 1 notice provisions—standards the Arizona Department of Environmental Quality ("ADEQ") has **incorporated** into the Arizona Administrative Code—Plaintiffs' state-law claims necessarily "rest on the application of federal regulations" and thus present a "significant federal issue" under *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308 (2005).

But Defendants identify no federal cause of action. They invoke *Grable*'s embedded-issue theory based on Arizona's adoption of federally derived standards as

---

[1] Defendants' Notice of Removal filed January 8, 2026, appears to be untimely (Doc. 1). 28 U.S.C. § 1446(b)(1) requires a notice of removal to be filed within 30 days after a defendant is served with the initial pleading. Defendants were both served with the initial complaint on December 8, 2025 (Doc. 1-7, Exs. 8–9), so the 30-day deadline expired on January 7, 2026. In any event, remand is independently required because the Court lacks subject-matter jurisdiction under 28 U.S.C. § 1331.

*state law*. Indeed, all of the FAC's duties and requested relief are expressly tethered to Arizona law and ADEQ's incorporation of federal standards, not to any freestanding federal cause of action or disputed federal interpretation.

Under *Grable* and its progeny, the question is not whether federal regulations are mentioned, quoted, or even incorporated as a standard of conduct. The question is whether the well-pleaded complaint necessarily raises a federal issue that is actually disputed, substantial, and capable of federal resolution without disrupting the federal-state balance approved by Congress. *E.g.*, *Gunn v. Minton*, 568 U.S. 251, 258 (2013). Here, it does not. At most, the FAC applies Arizona law that happens to incorporate federal standards.

ADEQ has primary authority under Arizona law pursuant to A.R.S. §§ 49-104 and 49-351 *et seq.*, and is charged with enforcing Arizona's RTCR. (FAC ¶¶ 27–38.) Through ADEQ, Arizona has adopted certain federal standards by incorporating them into Arizona law by reference. For example, A.A.C. R18-4-119, like other relevant Arizona regulations in the FAC, does not repeat verbatim the text of federal regulations, but instead states: "40 CFR 141, Subpart Q (40 CFR 141.201 through 141.211 and Appendices A, B, and C), is **incorporated by reference** as of the date specified in R18-4-102; this incorporation does not include any later amendments or editions."

Without exception, every federal regulation cited in the FAC was also adopted by Arizona and the FAC clearly states, "although this Complaint cites federal regulations, those provisions are binding Arizona law and have been adopted by the State of Arizona." (FAC ¶¶ 39–40.)

Contrary to Defendants' contention that Plaintiffs' claims are "[p]remised on violations of *federal standards*" (Notice of Removal ("NOR") ¶ 3.) (Doc. 1), Plaintiffs' claims only seek to enforce *Arizona* duties and law—particularly to stop misleading, inaccurate, and unduly delayed Tier 1 warnings to Arizona residents—grounded exclusively in Arizona's nuisance statutes, Arizona's negligence doctrines, and ADEQ's regulations (which adopt federal standards).

It is well established that a state's choice to adopt federal standards as state law does not convert state-law tort or declaratory relief actions into federal-question cases. *E.g., Nevada v. Bank of Am. Corp.*, 672 F.3d 661, 675 (9th Cir. 2012) (holding state claims referencing federal standards do not create federal subject-matter jurisdiction); *Rains v. Criterion Sys., Inc.*, 80 F.3d 339, 346 (9th Cir. 1996) (state claim referencing federal law does not create federal subject-matter jurisdiction); *see also Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 810 (1988) (no "arising under" jurisdiction where relief may be granted on an alternative state-law ground without reaching any federal question).

ADEQ's having incorporated applicable federal standards into Arizona regulations means any incorporated "federal" standard in this case is necessarily pleaded and applied as state law, and Defendants cannot identify any genuine federal issue that Plaintiffs must win to prevail. In short, "[t]his case cannot be squeezed into the slim category *Grable* exemplifies." *Empire Healthchoice Assur., Inc. v. McVeigh*, 547 U.S. 677, 701 (2006). And, because Defendants have not and cannot carry their burden to establish federal subject-matter jurisdiction under *Grable*, remand is mandatory. 28 U.S.C. § 1447(c).

## II. RELEVANT ALLEGATIONS AND PROCEDURAL HISTORY

### A. Plaintiffs pleaded only Arizona causes of action.

For background, Plaintiffs' FAC explains the RTCR is a federal rule promulgated by EPA. (FAC ¶ 27.) But, the FAC repeatedly states Arizona adopted those standards as state law: "Arizona adopted RTCR federal regulations by 'incorporating them by reference.' *E.g.*, A.A.C. §§ R18-4-102, R18-4-105, R18-4-119, and R18-4-126(A)." (FAC ¶ 39.) "Thus, although this Complaint cites federal regulations, those provisions are binding Arizona law and have been adopted by the State of Arizona." (FAC ¶ 40.)

Likewise, in the Prayer for Relief—central to Defendants' removal theory—Plaintiffs only seek declarations and injunctions "*as required by Arizona law and ADEQ regulations incorporating the RTCR*," including:

> "Declare that … Defendant GW-Santa Cruz failed to provide timely, adequate, and effective Tier 1 public notice and warnings as required by *Arizona law and ADEQ regulations* incorporating the RTCR." (FAC, Prayer ¶ B.)

> "Declare that … communications … were false, misleading, incomplete, or otherwise inadequate under *Arizona law, including A.A.C. R18-4-119 and ADEQ regulations* incorporating the RTCR." (FAC, Prayer ¶ C.)

> "Enjoin GW-Santa Cruz from delaying Tier 1 notices beyond the timeframe required by 40 C.F.R. § 141.202(a) and *A.A.C. R18-4-119 [which incorporates § 141.202]*, namely 'as soon as practical' (and no later than 24 hours) …" (FAC, Prayer ¶ E.)

> "Enjoin Defendant GW-Santa Cruz to maintain written Tier 1 notice procedures ensuring compliance with … requirements of 40 C.F.R. §§ 141.202–141.205 and *A.A.C. R18-4-119 [incorporating §§ 141.202–141.205]…*" (FAC, Prayer ¶ G.)

Plaintiffs also specifically allege that any injunctive relief sought be "narrowly tailored" to enforce existing duties "under Arizona law" and ADEQ regulations. (FAC ¶ 389.)

**B. Defendants removed under *Grable's* "embedded-issue" theory.**

Defendants removed this case asserting "original jurisdiction … under 28 U.S.C. § 1331," contending that "[a]lthough pled as state-law causes of action, in substance, Plaintiffs' claims rest on the application of federal regulations and standards" and therefore "implicate significant federal issues" under *Grable*. (NOR ¶ 4.) That is incorrect because this case only involves application of *Arizona* regulations and standards.

Yet Defendants' theory is that—because the FAC cites federal RTCR and Tier 1 notice provisions "in at least 56 paragraphs" and seeks declaratory or injunctive relief referencing those provisions—this case necessarily raises a federal issue. (NOR ¶¶ 5–7.) Defendants also claim supplemental jurisdiction over "any claims arising under state law" under 28 U.S.C. § 1367. (NOR ¶ 8.)

**III. LEGAL STANDARD**

A defendant may remove only those actions that could have been filed in federal court in the first instance. 28 U.S.C. § 1441(a). A removing defendant bears the burden of establishing federal subject-matter jurisdiction, and removal statutes are strictly construed against removal. *E.g., Hunter v. Philip Morris USA*, 582 F.3d 1039, 1042 (9th Cir. 2009); *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992). Accordingly, there is a "strong presumption against removal," *Hunter*, 582 F.3d at 1042, and "any doubt" is resolved in favor of remand, *Gaus*, 980 F.2d at 566.

A plaintiff is the master of the complaint and may choose to rely exclusively on state law, even where federal law might supply an alternative theory. *Caterpillar Inc. v.*

*Williams*, 482 U.S. 386, 392 (1987). Federal-question jurisdiction exists only when a federal question appears on the face of the well-pleaded complaint. *Franchise Tax Bd. v. Constr. Laborers Vacation Tr.*, 463 U.S. 1, 9–14 (1983). Anticipated defenses, federal compliance arguments, or the presence of a federal standard as evidence of duty in a state claim do not create § 1331 jurisdiction. *E.g., Vaden v. Discover Bank*, 556 U.S. 49, 60 (2009); *Merrell Dow Pharm. Inc. v. Thompson*, 478 U.S. 804, 813–17 (1986); *Rains*, 80 F.3d at 344–46.

Relevant here, the Supreme Court recognizes a "special and small category" of cases where state-law claims can "arise under" federal law because they necessarily raise a *federal issue* that is actually disputed, substantial, and capable of resolution in federal court without upsetting the congressionally approved balance of federal and state judicial responsibilities. *Gunn*, 568 U.S. at 258; *Grable*, 545 U.S. at 314. This is a very narrow subset of cases and if any element of this limited "embedded-issue" jurisdiction fails, there is no § 1331 jurisdiction and remand is mandatory. Indeed, the Supreme Court has reaffirmed that "arising under" analysis tracks § 1331 and is governed by the same *Grable/Gunn* framework. *Merrill Lynch, Pierce, Fenner & Smith Inc. v. Manning*, 578 U.S. 374 (2016).

## IV.    ARGUMENT

### A.  The FAC does not plead *any* federal cause of action.

Plaintiffs pleaded four causes of action under Arizona law and seek declaratory and injunctive relief under Arizona law tied to Arizona duties and remedies. Nothing on

the face of the FAC asserts a claim created by federal law, nor does the FAC invoke any federal private right of action, and Defendants do not contend the Safe Drinking Water Act ("SDWA") completely preempts the field.

To the contrary, the FAC removes any ambiguity. It expressly states Plaintiffs "assert *only* state-law causes of action," and "*do not assert* any claim under the Safe Drinking Water Act . . . or any other federal statute." (FAC ¶¶ 290–291.) It states that references to federal regulations appear only because "Arizona law incorporates and enforces those requirements through ADEQ's drinking-water rules, and/or to describe the standard of care and duties applicable under *Arizona law*, including A.A.C. §§ R18-4-102, R18-4-105, R18-4-119, and R18-4-126(A)." (FAC ¶ 292.)

Here, Defendants' removal depends on recharacterizing Plaintiffs' Arizona-law claims as "federal" because the FAC references RTCR/Tier 1 standards incorporated by ADEQ. But the FAC is explicit that, for purposes of these claims, those standards are binding Arizona law: "Arizona adopted RTCR federal regulations by 'incorporating them by reference.' …" (FAC ¶ 39.) Clearly stating, "although this Complaint cites federal regulations, those provisions are binding Arizona law and have been adopted by the State of Arizona."[2] (FAC ¶ 40.)

---

[2] Administrative rules and regulations are given the full force and effect of law in Arizona. *E.g., Gorman v. Pima County*, 230 Ariz. 506, 510, ¶ 18, 287 P.3d 800, 804 (App. 2012); *Midtown Med. Grp., Inc. v. State Farm Mut. Auto. Ins. Co.*, 220 Ariz. 341, 344, ¶ 10, 206 P.3d 790, 793 (App. 2008).

Where a state adopts federal standards into state law, a plaintiff's claim to enforce the state-law duty does not become a federal claim. Otherwise, vast categories of state tort and consumer-protection law—routinely referencing federally derived standards (OSHA, FDA, EPA, DOT, etc.)—would be removable contrary to the well-pleaded complaint rule and Congress's choice to keep most of those disputes in state court. *Nevada*, 672 F.3d at 675 (rejecting *Grable* jurisdiction where state claims "borrowed" federally created standards); *Rains*, 80 F.3d at 346 (state claim referencing federal law does not create federal question jurisdiction); *Empire Healthchoice*, 547 U.S. at 699–701 (rejecting expansion of *Grable* jurisdiction).

Indeed, this is the *Merrell Dow* situation: state-law claims alleging breach of a standard that originates in federal regulation do not "arise under" federal law, especially where Congress did not create a federal private right of action for the alleged regulatory violation. *Merrell Dow Pharm. Inc. v. Thompson*, 478 U.S. 804, 812 (1986). The SDWA confirms Congress knows how to create federal causes of action when it wants to—as it does include a limited citizen-suit civil provision for certain SDWA violations—yet Plaintiffs do not plead a SDWA citizen-suit claim and the FAC expressly disclaims any such cause of action. (FAC ¶¶ 290–292.)

More important, a "savings clause" in the SDWA's citizen-suit provision broadly states that it does not restrict "any right which any person (or class of persons) may have under any statute or common law to seek enforcement of any requirement prescribed by or under this subchapter or to seek any other relief." *See* 42 U.S.C. § 300j-8(e). Congress's

decision to provide a limited cause of action under the SDWA along with a broad "savings clause" reinforces that *Grable*'s "embedded-issue jurisdiction" is inappropriate here.

**B. No federal issue is "necessarily raised."**

Under *Grable/Gunn*, "embedded-issue" removal is proper only if a federal issue is (1) necessarily raised; (2) actually disputed; (3) substantial; and (4) capable of federal resolution without disrupting the congressionally approved balance of federal and state judicial responsibilities. *Gunn*, 568 U.S. at 258.

The first prong is fatal here. A federal issue is "necessarily raised" only when it is a necessary element of the state-law claim—*i.e.*, when the plaintiff's right to relief necessarily depends on resolution of the federal issue. *E.g., Gunn*, 568 U.S. at 259 (state claim arises under federal law only if it "necessarily raise[s] a stated federal issue"); *Christianson*, 486 U.S. at 810 (where a claim is supported by alternative theories, a federal issue is not "necessarily raised" unless it is *essential* to the claim's success, not merely one theory); *Rains*, 80 F.3d at 346 (no federal-question jurisdiction where claim "can be supported by alternative and independent theories," one state and one federal, because federal law is not a necessary element).

Here, Plaintiffs' claims can all be resolved exclusively by applying ***Arizona law***—namely, application of duties arising under Arizona law—and by determining whether Defendants complied with those Arizona duties in the context of Arizona tort and nuisance principles. Critically, the FAC repeatedly pleads duties exclusively "under

Arizona law" as well as those arising from "ADEQ regulations incorporating the RTCR," and seeks injunctions to enforce those Arizona duties:

Prayer ¶ B seeks a declaration of failure "as required by Arizona law and ADEQ regulations incorporating the RTCR."

Prayer ¶ C seeks a declaration of inadequacy "under Arizona law, including A.A.C. R18-4-119 and ADEQ regulations incorporating the RTCR."

Likewise, even where the FAC's Prayer references 40 C.F.R. sections, it does so in tandem with *A.A.C. R18-4-119* and expressly incorporated Arizona law. (Prayer ¶ E; Prayer ¶ G.) That is, the FAC repeatedly frames the relief as enforcing Tier 1 rules "(as incorporated by Arizona law)" and alongside A.A.C. R18-4-119. Any reference to 40 C.F.R. provisions is only "as incorporated" into Arizona's law, so the rule-of-decision remains *state law* even if the standard originated federally. Similarly, interpretation or application of federal law is not essential to any claim's success.

To be clear, Plaintiffs do not seek adjudication of federal agency action, federal primacy, federal enforcement, federal permitting, or the meaning of any federal statute in a manner that controls the outcome of other federal cases. Plaintiffs seek state-law remedies for state-law wrongs—namely, misleading and delayed public notices to Arizona residents—using state-law standards adopted by Arizona.

Here, Arizona—not federal—law supplies the rule of decision: ADEQ's duties and regulations are the operative source of Defendants' duties in this case, even where they adopt federal standards. Plaintiffs even request an injunction that is "narrowly tailored" to enforce "existing . . . duties under Arizona law" and ADEQ-incorporated requirements.

(FAC ¶ 389.) At most, the case may involve consulting the text of standards that originated in federal regulations. But simply referencing a federally sourced standard as a standard of care incorporated by state law is not the same as "necessarily raising" a federal issue for § 1331 purposes. *E.g.*, *Merrell Dow*, 478 U.S. at 813–17; *Rains*, 80 F.3d at 343–44. Indeed, even if the ultimate injunction tracks 40 C.F.R., the duty being enforced is **<u>Arizona's rule</u>**, and the court is only being asked to decide the case by applying Arizona law and compliance without deciding any federal interpretive dispute.

### C. No federal issue is "actually disputed."

Defendants never identify a concrete federal question whose meaning the Court must decide nor do they identify any federal issue that is actually disputed. Instead, their NOR offers a citation-counting exercise and misleading provenance arguments ("federal regulations and standards") rather than a disputed construction of a federal statute or regulation. (NOR ¶¶ 5–7.)

That is because there is none. The controversy here is factual and based entirely in the application of Arizona state-law—namely, whether Defendants' conduct satisfied Arizona's public notice duties, including those adopted by ADEQ regulations. Likewise, despite counting citations to federal regulations, Defendants fail to point to a single federal regulation—particularly one related to any of Plaintiffs' claims—that has not been expressly adopted by ADEQ as Arizona law.

This is a local drinking-water case brought by local residents against a local utility in connection with an *E. coli* incident in one Arizona community and deals exclusively

with violations of Arizona law. There is no federal issue, agency, or program involved aside from the jurisdictionally-irrelevant fact that Arizona adopted federal standards to regulate this utility. This is at most a dispute about Defendants' compliance and the adequacy of Defendants' public communications under applicable Arizona law.

### D. There is no "substantial" federal issue.

Even if Defendants could identify an "actually disputed" interpretive federal issue, it would not be "substantial" in the sense required by *Gunn*. Substantiality is about the importance of the issue to the *federal system* as a whole—not the parties' stakes. *Gunn*, 568 U.S. at 260–63. This case is a localized, fact-bound dispute about Defendants' conduct during a contamination event in Arizona and the adequacy, timeliness, truthfulness of public notice to customers in Arizona.

It is the opposite of the rare *Grable* scenario where a pure issue of federal law (*i.e.*, the meaning of an IRS federal tax notice provision) was the central and controlling dispute, and the federal government had a strong interest in national uniformity. *See Cal. Shock Trauma Air Rescue v. State Comp. Ins. Fund*, 636 F.3d 538, 542–44 (9th Cir. 2011) (noting, on its face, the complaint in *Grable* "premised its [state-law] superior title claim on a failure **by the IRS** to give it adequate notice, as defined by federal law.").

Unlike *Grable*—where a uniform federal answer about a federal tax-notice requirement was central to a federal tax-collection scheme—this case concerns Arizona standards implemented and enforced through ADEQ's incorporation of those standards into the Arizona Administrative Code. Arizona's regulatory "primacy" here eliminates

any systemwide federal interest in federal-court uniformity for this fact-bound dispute about Defendants' compliance and public communications to Arizona residents.

To be sure, Congress structured the SDWA as a cooperative-federalism regime: EPA sets national minimum standards through National Primary Drinking Water Regulations ("NPDWRs"), but EPA may confer "primary enforcement responsibility" ("primacy") on a State that adopts drinking-water regulations "no less stringent" than the NPDWRs and maintains adequate enforcement authority and program capacity. 42 U.S.C. § 300g-2(a).

Critically, however, the SDWA also contains express savings provisions confirming Congress did **not** federalize state drinking-water law or displace state judicial remedies: "***Nothing in this subchapter shall diminish any authority of a State … to adopt or enforce any law or regulation respecting drinking water regulations or public water systems***," 42 U.S.C. § 300g-3(e), and "[n]othing in this section shall restrict any right" under "***any statute or common law***" to seek enforcement or "any other relief," and nothing in the SDWA (or any other federal law) shall be construed to "prohibit, exclude, or restrict" State or local governments from pursuing relief in state or local court. 42 U.S.C. § 300j-8(e).

In short, Congress contemplated that ***primacy States*** would implement and enforce drinking-water standards as ***state law***, subject to federal oversight backstops—not that every dispute touching a federal standard would be heard in federal court. *See Nat'l Wildlife Fed'n v. EPA*, 925 F.2d 470, 471–72 (D.C. Cir. 1991) (describing SDWA

primacy). Accordingly, Defendants' assertion that "uniformity" requires a federal forum collapses under *Grable/Gunn*: Plaintiffs' negligence-per-se theory arises from and requires interpretation of Arizona's own A.A.C./ADEQ regulations (and the nuisance and injunctive-relief claims turn on state standards and state remedies), and any federal overlay is, at most, background.

Even if a federal issue were incidentally implicated, it is not "substantial" in the *Grable* sense—*i.e.*, important to the federal system as a whole—because it would be fact-bound and situation-specific and would not bind the EPA or other States. *E.g.*, *Gunn*, 568 U.S. at 258; *Empire Healthchoice*, 547 U.S. at 700–01.

**E. Exercising federal jurisdiction here would disrupt the congressionally approved federal-state balance.**

The fourth *Grable/Gunn* prong also defeats removal. Treating state-law claims as removable whenever state law incorporates federally sourced standards would open federal courts to a wide range of state tort, nuisance, and consumer-protection suits— precisely the "floodgates" concern the Supreme Court has warned against in limiting *Grable* to a "special and small category." *Empire Healthchoice*, 547 U.S. at 699–701 (rejects expansion; emphasizes "slim category"); *Grable*, 545 U.S. at 313–15 (balance concern; rare category). If Defendants' incorporation-by-reference removal theory were enough, embedded-issue jurisdiction would swallow the rule. Congress designed primacy regimes (including drinking-water primacy) with a clear role for states. Allowing removal simply because Arizona incorporated federal standards into state law would invert that balance and unduly expand § 1331 jurisdiction.

**F. Section 1367 cannot bootstrap jurisdiction.**

Defendants assert supplemental jurisdiction over state claims because they are "part of the same case or controversy" as purported federal claims. (NOR ¶ 8.) But supplemental jurisdiction cannot supply the "original jurisdiction" required by the removal statute. *Syngenta Crop Prot., Inc. v. Henson*, 537 U.S. 28, 32–34 (2002). Here there is no federal "anchor" that provides federal question jurisdiction. *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 164–65 (1997). Without original jurisdiction under § 1331, supplemental jurisdiction under § 1367 is irrelevant.

**V.      REQUEST FOR FEES AND COSTS UNDER 28 U.S.C. § 1447(c)**

Under 28 U.S.C. § 1447(c), the Court may award "just costs and any actual expenses, including attorney fees, incurred as a result of the removal." Fees are appropriate when the removing party lacked an objectively reasonable basis for removal. *Martin v. Franklin Capital Corp.*, 546 U.S. 132 (2005).

Defendants' NOR repeatedly re-characterizes Plaintiffs' claims as "premised on violations of federal standards"[3] (NOR ¶ 3), yet the FAC clearly alleges the operative duties arise under Arizona law through ADEQ incorporation. (FAC ¶¶ 39–40.) The FAC also expressly disclaims any claim under the SDWA or any other federal statute and

---

[3] Defendants' NOR selectively quotes the FAC, omitting portions of allegations anchoring applicable duties in Arizona law. For example, the NOR cites FAC ¶ 445 for the proposition that Count Three is premised on a duty "under the RTCR," suggesting a free-standing federal duty. (NOR ¶ 7.) The actual FAC, however, alleges a duty "under the RTCR and *corresponding Arizona regulations, A.A.C. R18-4-126 and R18-4-119,*" in addition to explaining "Arizona adopted the RTCR." (FAC ¶ 34–40.)

alleges that any references to federal regulations appear only because Arizona law incorporates and enforces those requirements through ADEQ's drinking-water rules. (FAC ¶¶ 290–292.) Nevertheless, Defendants removed principally by citing the number of federal references and requested relief, rather than identifying any genuinely disputed, substantial federal issue that is necessarily raised under *Gunn*/*Grable*.

In light of controlling Ninth Circuit authority rejecting § 1331 jurisdiction on similar theories, *e.g., Nevada*, 672 F.3d at 675; *Rains*, 80 F.3d at 346, removal lacked an objectively reasonable basis. *See Lussier v. Dollar Tree Stores, Inc.*, 518 F.3d 1062, 1065 (9th Cir. 2008) (objective reasonableness standard; fees appropriate where removing party lacked an objectively reasonable basis). Accordingly, Plaintiffs respectfully request an award of fees and costs incurred as a direct result of removal and this remand motion.

## VI. CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court remand this action to the Superior Court of Arizona in and for Pinal County and award Plaintiffs just costs and actual expenses, including attorney fees, under 28 U.S.C. § 1447(c).

DATED: January 9, 2026

**FRIEDL RICHARDSON, P.C.**

By: /s/ Geoffrey M. Trachtenberg
Geoffrey M. Trachtenberg
*Attorneys for Plaintiffs*

**CERTIFICATE OF SERVICE**

I hereby certify that on January 9, 2026, I electronically transmitted the foregoing document to the U.S. District Court Clerk's Office using the CM/ECF System for filing, and emailed a copy to the following CM/ECF registrants:

Gregory J. Marshall
Matt Jarvey
Taryn Gallup
Zachary J. Smith
SNELL & WILMER, LLP
One East Washington Street
Suite 2700
Phoenix, Arizona 85004-2556
*Attorneys for Defendants*
Global Water – Santa Cruz Water Company, Inc.
and Global Water Resources, Inc.
gmarshall@swlaw.com
mjarvey@swlaw.com
tgallup@swlaw.com
zsmith@swlaw.com.


By: /s/ Lisa Balbini