**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Pauline Donatto, et al., | No. CV-26-00101-PHX-DWL |
| Plaintiffs, | **ORDER** |
| v. | |
| Global Water-Santa Cruz Water Company Incorporated, et al., | |
| Defendants. | |

Plaintiffs are customers of Defendant Global Water-Santa Cruz Water Company Incorporated ("GW-Santa Cruz").[1]  In their First Amended Complaint ("FAC"), Plaintiffs raise claims "aris[ing] from an acute drinking-water contamination event in the City of Maricopa, where [GW-Santa Cruz] operates a public water system serving approximately 84,000 persons." (*Id.* ¶ 1.)  The FAC asserts four causes of action: (1) declaratory judgment and injunctive relief for unduly delayed and inadequate public notification (*id.* ¶¶ 344-90); (2) declaratory judgment and injunctive relief for false and misleading public notification (*id.* ¶¶ 391-440); (3) operational negligence (*id.* ¶¶ 441-74); and (4) public nuisance (*id.* ¶¶ 475-95).  According to the FAC, all four of these claims are "only state-law causes of action." (*Id.* ¶ 290.)

After being served, Defendants filed a notice of removal.  (Doc. 1.)  The sole asserted jurisdictional basis for removal is federal-question jurisdiction: "This Court has

---

[1]      Plaintiffs also sue Global Water Resources Incorporated ("GWRI"), the parent company of GW-Santa Cruz.  (Doc. 1-8 ¶ 42.)  The Court will refer to GW-Santa Cruz and GRWI collectively as "Defendants."

original jurisdiction over this action under 28 U.S.C. § 1331 because Plaintiffs' claims 'arise[] under' federal law.  Although pled as state-law causes of action, in substance, Plaintiffs' claims rest on the application of *federal* regulations and standards.  Plaintiffs' claims thus 'implicate significant federal issues' such that this Court has federal-question jurisdiction over this action and it is removable by Defendants."  (*Id.* ¶ 4.)

Now pending before the Court is Plaintiffs' motion to remand.  (Doc. 5.)  After the motion became fully briefed (Docs. 10, 11), the Court issued a tentative ruling and scheduled oral argument (Doc. 17) and the parties then stipulated to vacate oral argument and submit on the tentative ruling (Doc. 18).  For the reasons that follow, the Court concludes that it lacks subject-matter jurisdiction and thus grants Plaintiffs' motion and remands this action to Pinal County Superior Court.[2]

**RELEVANT BACKGROUND**

The following relevant background is derived from the FAC.  (Doc. 1-8.)

"In late August 2025, Defendant GW-Santa Cruz received a laboratory result showing the presence of *E. coli*—a fecal-indicator organism—in its drinking-water distribution system."  (*Id.* ¶ 2.)  "Under Arizona law and fundamental public health principles, detection of *E. coli* in a routine distribution sample constitutes an acute drinking-water emergency *and* a potential Maximum Contaminant Level ('MCL') violation because it signals that fecal contamination may have entered the public water supply."  (*Id.* ¶ 3.)

"After learning of the *E. coli*-positive result, Defendant GW-Santa Cruz increased chlorine levels and flushed hydrants in the affected area before collecting the required repeat samples."  (*Id.* ¶ 4.)  "Even after Defendant GW-Santa Cruz's chlorination and flushing, repeat testing from an adjacent property upstream of the original test point in Defendant GW-Santa Cruz's system *still* showed Total Coliform contamination."  (*Id.* ¶ 6.)  "Because the routine sample was *E. coli*-positive, a Total Coliform-positive repeat sample

---

[2]   This conclusion renders it unnecessary to address the parties' arguments regarding the timeliness of Defendants' removal notice.

triggered an acute *E. coli* MCL violation." (*Id.* ¶ 7.) "At that stage, Defendant GW-Santa Cruz had an immediate, urgent, and non-delegable duty under Arizona law and the Revised Total Coliform Rule ('RTCR') to issue a Tier 1 public notice '*as soon as practical*,' and in no event later than 24 hours, to warn persons served of the *E. coli* MCL violation and the associated public health risks." (*Id.* ¶ 8.)

The RTCR "went into effect on April 1, 2016." (*Id.* ¶ 27.) "The RTCR is a federal regulation promulgated by the Environmental Protection Agency ('EPA'), pursuant to the Safe Drinking Water Act [('SDWA')], 42 U.S.C. §§ 300f through 300j26." (*Id.*)[3] "The RTCR requires public water systems ('PWS') to identify and correct conditions that could lead to microbial contamination, with *E. coli* as the primary public health indicator organism." (*Id.* ¶ 28.) The RTCR contains several requirements that are outlined in the FAC. (*Id.* ¶¶ 45-84.) Among those is a "public notification" requirement: "If an *E. coli* MCL violation occurs—or if required repeat monitoring is not completed and the presence of *E. coli* cannot be ruled out—the PWS must issue a Tier 1 public notice '*as soon as practical*' (but not later than 24 hours)." (*Id.* ¶ 60.) The RTCR also includes requirements for the content of public notices: "A Tier 1 public notice must include: the nature of the contamination; source of the contamination (if known); required health effects language; precautionary measures ('boil your water before using,' 'do not drink the water,' 'use bottled water'); the population at risk; corrective actions underway; and when safe water is expected to be restored." (*Id.* ¶ 63.) The RTCR also includes requirements for the method of delivery of the public notice: "The notice must be provided in a manner reasonably calculated to immediately reach '*all persons served*,' including residential, commercial, transient, and non-transient users of the PWS." (*Id.* ¶ 64.)

"Under federal law, states may administer their own drinking water programs if they obtain 'primacy' from the EPA." (*Id.* ¶ 34.) "To receive and maintain primacy, a state

---

[3] Defendants explain in their notice of removal that the RTCR and the rules related to Tier 1 public notice are part of the "rules and standards in the federal National Primary Drinking Water Regulations ['NPDWR'], promulgated by the federal [EPA] and found in Title 40, Part 141 of the Code of Federal Regulations." (Doc. 1 ¶ 5.)

must adopt regulations no less stringent than the RTCR, enforce those regulations, report data to the EPA, and take enforcement action when violations occur." (*Id.* ¶ 35.) "States cannot opt out of the RTCR or adopt weaker standards." (*Id.* ¶ 36.) "Arizona has obtained 'primacy' and the Arizona Department of Environmental Quality ('ADEQ') is charged with enforcing the RTCR." (*Id.* ¶ 37.) "Arizona's Safe Drinking Water Program is administered by ADEQ pursuant to A.R.S. §§ 49-104 and 49-351 *et seq.*, and implementing regulations in A.A.C. Title 18, Chapter 4." (*Id.* ¶ 38.) "Arizona adopted RTCR federal regulations by 'incorporating them by reference.'" (*Id.* ¶ 39.) The FAC alleges that "although [the FAC] cites federal regulations, those provisions are binding Arizona law and have been adopted by the State of Arizona." (*Id.* ¶ 40.)

In a nutshell, the FAC alleges that GW-Santa Cruz's "Tier 1 public notice was not distributed 'as soon as practical.'" (*Id.* ¶ 10.) The FAC also alleges that "when Defendant GW-Santa Cruz finally got around to preparing a Tier 1 notice, it crafted a method and form of notice that diminished and obfuscated significant public health information instead of fully informing and warning the public, as required by law and standard public health practices." (*Id.* ¶ 11.) And the FAC alleges that, "[i]n practical effect, Defendant GW-Santa Cruz buried key facts, omitted critical information, and issued communications that were delayed, incomplete, and misleading, and that were unnecessarily difficult for customers to understand." (*Id.* ¶ 14.) The FAC also alleges that "most persons served by" GW-Santa Cruz's public notice system "never received any direct notice." (*Id.* ¶ 16.) "As a result of these actions and omissions," the FAC alleges that "many residents in Rancho El Dorado in the City of Maricopa and nearby neighborhoods continued to drink, cook with, and otherwise use water that may have been contaminated with fecal pathogens," resulting in various illnesses and other injuries. (*Id.* ¶¶ 20-22.)

…

…

…

…

- 4 -

**DISCUSSION**

I.    Legal Standard

"Under 28 U.S.C. § 1441, a defendant may remove an action filed in state court to federal court if the federal court would have original subject matter jurisdiction over the action." *Moore-Thomas v. Alaska Airlines, Inc.*, 553 F.3d 1241, 1243 (9th Cir. 2009). "Federal courts have original jurisdiction over 'all civil actions arising under the Constitution, laws, or treaties of the United States.'" *Id.* (quoting 28 U.S.C. § 1331). "The scope of this statutory grant of jurisdiction is a matter of congressional intent, and the Supreme Court has determined that Congress conferred a more limited power than the full scope of judicial power accorded in the Constitution." *City of Oakland v. BP PLC*, 969 F.3d 895, 903 (9th Cir. 2020) (cleaned up). "The general rule, referred to as the 'well-pleaded complaint rule,' is that a civil action arises under federal law for purposes of § 1331 when a federal question appears on the face of the complaint." *Id.* (citing *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987)). "[A]s the 'master of the claim,' the plaintiff can generally avoid federal jurisdiction by exclusive reliance on state law." *Id.* at 904 (cleaned up).

There are, however, "a few exceptions to the well-pleaded complaint rule." *Id.* As relevant here, "the Supreme Court has recognized a special and small category of state-law claims that arise under federal law for purposes of § 1331 because federal law is a necessary element of the . . . claim for relief." *Id.* (cleaned up).[4] "Only a few cases have fallen into this slim category." *Id.* (cleaned up). "In other cases where parties have sought to invoke federal jurisdiction for state-law claims, the Court has concluded that jurisdiction was lacking, even when the claims were premised on violations of federal law, required remedies 'contemplated by a federal statute,' or required the interpretation and application of a federal statute in a hypothetical case underlying a legal malpractice claim." *Id.* (citations omitted).

---

[4]    This is the only exception to the well-pleaded complaint rule advanced by Defendants in their removal notice. (Doc. 1 ¶ 4.)

"The Court has articulated a test for deciding when this exception to the well-pleaded complaint rule applies.  As explained in [*Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308 (2005)] and later in [*Gunn v. Minton*, 568 U.S. 251 (2013)], federal jurisdiction over a state-law claim will lie if a federal issue is (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress."  *Id.* (cleaned up).[5]  "All four requirements must be met for federal jurisdiction to be proper." *Id.* at 904-05.

"A motion to remand is the proper procedure for challenging removal."  *Moore-Thomas*, 553 F.3d at 1244 (citing 28 U.S.C. § 1447(c)).  A plaintiff may move to remand for lack of subject-matter jurisdiction, and "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded."  28 U.S.C. § 1447(c).  "The removal statute is strictly construed, and any doubt about the right of removal requires resolution in favor of remand."  *Moore-Thomas*, 553 F.3d at 1244. "The presumption against removal means that the defendant always has the burden of establishing that removal is proper."  *Id.* (cleaned up).

II.     The Parties' Arguments

Plaintiffs move to remand this case "for lack of federal-question jurisdiction under 28 U.S.C. § 1331."  (Doc. 5 at 1.)  Plaintiffs argue that they "pleaded four causes of action exclusively and expressly under Arizona law" and that the FAC "specifically disclaims any federal cause of action and pleads only Arizona-law theories."  (*Id.* at 2.)  Plaintiffs argue that Defendants' attempt to "invoke *Grable*'s embedded-issue theory based on Arizona's adoption of federally derived standards as *state law*" fails because "[w]ithout exception, every federal regulation cited in the FAC was also adopted by Arizona and the FAC clearly states, 'although this Complaint cites federal regulations, those provisions are binding Arizona law and have been adopted by the State of Arizona.'"  (*Id.* at 2-3.)  Plaintiffs argue that "[i]t is well established that a state's choice to adopt federal standards as state law does

---

[5]     This order will refer to this four-factor test as the "*Grable/Gunn* factors."

not convert state-law tort or declaratory relief actions into federal-question cases." (*Id.* at 4.) Plaintiffs also argue that "Defendants cannot identify any genuine federal issue that Plaintiffs must win to prevail." (*Id.*) Plaintiffs note that the FAC does not "invoke any federal private right of action." (*Id.* at 8.) And Plaintiffs argue that "[w]here a state adopts federal standards into state law, a plaintiff's claim to enforce the state-law duty does not become a federal claim. Otherwise, vast categories of state tort and consumer-protection law—routinely referencing federally derived standards (OSHA, FDA, EPA, DOT, etc.)— would be removable contrary to the well-pleaded complaint rule and Congress's choice to keep most of those disputes in state court." (*Id.* at 9.) Plaintiffs next argue that the present case "is the *Merrell Dow* situation" in which the Supreme Court held that "state-law claims alleging breach of a standard that originates in federal regulation do not 'arise under' federal law, especially where Congress did not create a federal private right of action for the alleged regulatory violation." (*Id.*, citing *Merrell Dow Pharms. Inc. v. Thompson*, 478 U.S. 804 (1986).) Plaintiffs argue that although the SDWA "does include a limited citizen-suit civil provision for certain SDWA violations . . . Plaintiffs do not plead a SDWA citizen-suit and the FAC expressly disclaims any such cause of action." (*Id.*) Plaintiffs also emphasize that the SDWA's citizen-suit provision contains a "savings clause" which provides that the statute does not restrict "any right which any person (or class of persons) may have under any statute or common law to seek enforcement of any requirement prescribed by or under this subchapter or to seek any other relief." (*Id.*, citing 42 U.S.C. § 300j-8(e).) Plaintiffs argue that the SDWA "confirm[s] Congress did not federalize state drinking-water law or displace state judicial remedies" and that "Congress contemplated that primacy States would implement and enforce drinking-water standards as state law, subject to federal oversight backstops—not that every dispute touching a federal standard would be heard in federal court." (*Id.* at 14, emphasis omitted.) Finally, Plaintiffs discuss the *Grable/Gunn* factors, arguing that none is satisfied here.

In response, Defendants argue that "Plaintiffs ubiquitously cite federal regulations as supplying the standards that—they claim—govern the outcome of this case," and

"Plaintiffs cannot escape the fact that, in substance, their claims depend on, and require the Court to interpret, federal law—specifically, federal regulations adopted under the [SDWA]." (Doc. 10 at 2.) Defendants argue that the "error" in Plaintiffs' argument "is that—unlike cases in which a state law claim makes glancing reference to federal law—in this case, federal regulations supply the entire substance of the standards upon which Plaintiffs' claims rely," and "the interpretation of federal regulations takes on a unique importance in this case that gives rise to federal-question jurisdiction." (*Id.*) Defendants argue that Count One "requires interpretations of federal standards and seeks a 'forward looking' injunction." (*Id.* at 6.) Specifically, Defendants argue that Count One is premised on a duty to issue Tier 1 notifications "as soon as practical" and "in a manner reasonably calculated to reach 'all persons served,'"—standards that are taken from the federal NPDWRs—and thus the Court will be "require[d] . . . to construe those federal standards to consider whether Defendants violated them." (*Id.*) Next, Defendants argue that Count Two "requires a determination of what notice content federal regulations require," and Defendants again argue that "[t]o resolve these disputes, the Court will have to interpret rules and regulations that are part of a federal regulatory scheme that encompasses *national* drinking water standards." (*Id.* at 7.) As for Counts Three and Four, Defendants argue that Plaintiffs' "allegations that [GW-Santa Cruz] was negligent *per se* necessarily derive from the standards set forth in the NPDWRs" and that "[o]f course, to adjudicate whether [GW-Santa Cruz] was negligent *per se*, the Court is required to determine what federal law requires under a regulatory scheme that encompasses *national* drinking water standards." (*Id.* at 8.) Defendants next argue that Count Four "relies in substance on [GW-Santa Cruz's] alleged violations of the *federal* regulatory standards that undergird Counts One and Two," and thus "the Court cannot adjudicate Count Four without interpreting federal standards regarding monitoring, sampling, and maintaining potable-water distribution systems adopted under a regulatory regime that sets *national* drinking water standards." (*Id.* at 8-9). Next, applying the *Grable/Gunn* factors, Defendants argue that "Plaintiffs' claims—especially their claims for declaratory and 'forward looking' injunctive relief in

Counts One and Two—turn on substantial questions of federal law, namely, the meaning and requirements of federal regulations implemented under a *national* regulatory regime." (*Id.*at 10.)  Defendants emphasize that "[t]he Arizona regulations on which Plaintiffs rely simply incorporate the applicable federal standards wholesale by reference to federal regulations." (*Id.* at 10-11.)  And Defendants argue that "[u]nlike any of the cases Plaintiffs rely on, this case involves a federal regulatory scheme under which Arizona has intentionally pegged its law to the minimum standards set by federal law to obtain primacy," and "[b]y declining to adopt *more*-stringent regulations, Arizona necessarily meant for its regulations to be nothing less than what federal regulations require."  (*Id.* at 11-12.)  Defendants next argue that "[n]one of the cases Plaintiffs cite in their Motion directly address the circumstances present here, in which state law incorporates wholesale by reference entire swaths of federal regulations as part of the state's effort to comply with minimum standards adopted under a *national* regulatory scheme." (*Id.* at 12.)  Defendants argue that "[t]his is not a case in which state law makes only a glancing reference to federal law," "[n]or is it a case in which Plaintiffs' claims rest on alternative and independent theories under state and federal law," nor is this "a case in which Congress has intended that there not be a federal private action for violations of the federal standard, as Congress expressly authorized a federal private action under the SDWA." (*Id.*, cleaned up.)  Thus, Defendants argue that "Congress always envisioned federal-question jurisdiction over disputes involving these claims." (*Id.*)  Defendants also argue that the federal issue is substantial here because "the Court's interpretation of the federal regulations at issue is bound to have implications beyond this case." (*Id.* at 13.)  And Defendants argue that the "federal issues involve nearly pure issues of law." (*Id.* at 14, cleaned up.)  Last, Defendants argue that "Plaintiffs argue as if they only pleaded garden variety, 'backward-looking' tort claims, but the gravamen of the FAC seek to impose Plaintiffs' interpretation of federal standards, and enjoin [GW-Santa Cruz] to abide by their interpretation of those federal standards going forward." (*Id.* at 15.)

In reply, Plaintiffs argue that "[t]his is a straightforward remand." (Doc. 11 at 1.)

Plaintiffs also reiterate their arguments regarding the *Grable/Gunn* factors. Among other things, Plaintiffs contend that they "may prevail on their claims without ever resolving any federal law as *federal law*." (*Id.* at 3.) Plaintiffs further argue that "Defendants' 'citation counting' does not satisfy *Grable*" because counting the number of citations to federal law in a complaint "cannot convert an expressly state-law case into a federal one." (*Id.*) Plaintiffs also argue that "Defendants' 'uniformity' rhetoric does not identify an actually disputed federal meaning that must be resolved; it identifies, at most, disputed fact-bound, situation-specific compliance facts under Arizona's adopted notice duties," and a "state-law claim that is fact-bound and situation-specific is not the type of claim for which federal-question jurisdiction lies." (*Id.* at 5, cleaned up.) Plaintiffs also argue that "Defendants cite no authority holding a plaintiff 'necessarily raises' a 'substantial' federal issue for § 1331 purposes simply by pleading state-law [SDWA] duties that incorporate federal drinking-water standards by reference" and that "[t]he only appellate decision Plaintiffs located addressing such an SDWA-based *Grable* theory *rejected* it." (*Id.*) Next, Plaintiffs argue that "Defendants' emphasis on prospective relief does not change" the substantiality analysis and that "if prospective relief alone created *Grable* substantiality whenever a State incorporated federal text, then every state-law injunction enforcing an incorporated federal standard would become removable." (*Id.* at 6.) Plaintiffs also argue that the SDWA's citizen-suit provision cuts in their favor because it "expressly preserves citizens' state and common-law avenues to enforce drinking-water requirements and seek other relief." (*Id.* at 6-7, emphasis omitted.) Last, Plaintiffs argue that "[a]dopting Defendants' theory would dramatically expand federal jurisdiction by sweeping routine state-law enforcement and tort cases into federal court," and if the mere incorporation of federal requirements into state regulatory programs were enough to confer federal jurisdiction, then "an enormous swath of routine State enforcement and tort litigation would become removable." (*Id.* at 7.)

…

…

- 10 -

III.    Analysis

      A.    **Counts Three and Four**

Count Three is entitled "Operational Negligence (Negligence *Per Se*)."  (Doc. 1-8 at 99.)  Count Four is entitled "Public Nuisance."  (*Id.* at 105.)

      1.    *Grable/Gunn* Factor 3

Defendants' removal notice asserts that Count Three "is premised on the theory that [Defendants] 'had a duty under the RTCR' to take various actions."  (Doc. 1 ¶ 7.)  And in their opposition brief, Defendants argue Count Three "arises under" federal law because "[a]lthough Plaintiffs are careful not to cite federal regulations in their supporting paragraphs, their allegations that [GW-Santa Cruz] was negligent *per se* necessarily derive from the standards set forth in the NPDWRs."  (Doc. 10 at 8.)  Likewise, Defendants argue that Count Four "relies in substance on [GW-Santa Cruz's] alleged violations of *federal* regulatory standards that undergird Counts One and Two."  (*Id.*)  In a nutshell, Defendants' argument is that because Counts Three and Four are premised on violations of Arizona law, and because Arizona law simply adopts federal law, any determination of liability "necessarily depends on resolution of a substantial question of federal law."  *Franchise Tax Bd. of State of Cal. v. Constr. Laborers Vacation Tr. for S. Cal.*, 463 U.S. 1, 28 (1983).

This argument is unavailing.  As the Ninth Circuit has observed, "the mere fact that a state statute is construed in accordance with a federal statute" is not, alone, enough to "give[] rise to federal question jurisdiction."  *Rains v. Criterion Sys., Inc.*, 80 F.3d 339, 347 n.9 (9th Cir. 1996).  Indeed, in *Merrell Dow*, the respondents filed a complaint in Ohio state court against the petitioner, the manufacturer and distributor of the drug Bendectin, alleging birth defects caused by ingestion of Bendectin by pregnant women.  478 U.S. at 805.  The complaint asserted six counts.  *Id.*  "In five of the six counts, the recovery of substantial damages was requested on common-law theories of negligence, breach of warranty, strict liability, fraud, and gross negligence.  In Count IV, respondents alleged that the drug Bendectin was 'misbranded' in violation of the Federal Food, Drug, and Cosmetic Act (FDCA), because its labeling did not provide adequate warning that its use

was potentially dangerous.  Paragraph 26 alleged that the violation of the FDCA 'in the promotion' of Bendectin 'constitutes a rebuttable presumption of negligence.'  Paragraph 27 alleged that the 'violation of said federal statutes directly and proximately caused the injuries suffered' by the two infants." *Id.* at 805-06 (citations omitted).  After the petitioner removed the case to federal court, the "[r]espondents filed a motion to remand to the state forum on the ground that the federal court lacked subject-matter jurisdiction." *Id.* at 806. "[T]he District Court held that Count IV of the complaint alleged a cause of action arising under federal law and denied the motion to remand." *Id.*  However, the Sixth Circuit reversed and the Supreme Court affirmed the Sixth Circuit's decision. *Id.* at 806-07.  The Court concluded that because there is no private right of action under the FDCA, "the presence of the federal issue as an element of the state tort is not the kind of adjudication for which jurisdiction would serve congressional purposes and the federal system. . . . [T]he congressional determination that there should be no federal remedy for the violation of this federal statute is tantamount to a congressional conclusion that the presence of a claim violation of the statute as an element of a state cause of action is insufficiently 'substantial' to confer federal-question jurisdiction." *Id.* at 814.  The Court summarized: "[A] complaint alleging a violation of a federal statute as an element of a state cause of action, when Congress has determined that there should be no private, federal cause of action for the violation, does not state a claim 'arising under the Constitution, laws, or treaties of the United States.'" *Id.* at 817 (quoting 28 U.S.C. § 1331.).  Put differently, the Court held that what would later become the third *Grable/Gunn* factor—i.e., whether the federal issue in the state-law claim is "substantial"—was not satisfied.

The facts here are similar to those in *Merrell Dow*.  In Count Three, Plaintiffs assert a claim for operational negligence, alleging that the duty and breach elements of their claim are satisfied based on Defendants' violation of Arizona law, which incorporates federal law.  Similarly, in Count Four, Plaintiffs assert a claim for public nuisance by alleging, among other things, that Defendants violated Arizona law incorporating federal law.  But even assuming Defendants are correct that Arizona law's incorporation of federal law

- 12 -

means that Counts Three and Four are necessarily based on violations of federal law, *Merrell Dow* holds that such state-law claims do not "arise under" federal law if, as here, Congress has not provided a private right of action to vindicate violations of the underlying federal law.

In an attempt to distinguish *Merrell Dow*, Defendants argue that "Congress expressly authorized a federal private action under the SDWA." (Doc. 10 at 12.) Citing 42 U.S.C. § 300j-8, Defendants contend that "Congress always envisioned federal-question jurisdiction over disputes involving these regulations." (*Id.*) This argument lacks merit. True, § 300j-8(a)(1) provides that "any person may commence a civil action on his own behalf . . . against any person . . . who is alleged to be in violation of any requirement prescribed by or under this subchapter," but § 300j-8 does not authorize a private person bringing such a claim to seek damages. *See generally Hootstein v. Amherst-Pelham Reg'l Sch. Comm.*, 361 F. Supp. 3d 94, 105 (D. Mass. 2019) ("Beyond giving the EPA authority to enforce the statute, the SDWA gives enforcement rights to private persons. First, 'any person may intervene as a matter of right' in government enforcement actions. Second, there is a citizen-suit provision creating a private right of action against alleged SDWA violators. There are certain procedural requirements for filing a citizen-suit, including giving notice to the potential defendant, the EPA, and the state where the violation occurred. The statute does not provide for an award of monetary damages.") (citations omitted). Count Three, meanwhile, seeks compensatory damages. (Doc. 1-8 ¶ 458 ["As a direct and proximate of Defendants GW-Santa Cruz's acts and omissions, Plaintiffs and the Illness Subclass sustained compensable injuries, including but not limited to economic losses . . . , loss of use and enjoyment of their homes and community water supply, emotional distress, anxiety, and inconvenience arising from reasonable fear of exposure to contaminated drinking water."]. *See also id.* at 109-12 [Prayer for Relief seeking, among other things, compensatory damages].) So does Count Four. (*Id.* ¶ 484 ["Plaintiffs and the class suffered damages, including but not limited to the cost of being billed for unsafe water, obtaining alternative water supplies, loss of use and enjoyment of their homes, as

well as fear, inconvenience, emotional distress, discomfort, and annoyance."]; *id.* ¶ 485 [noting that "monetary relief under this Count is sought solely on behalf of the Illness Subclass" whereas "[t]he Exposure Subclass seeks under this Count only declaratory and injunctive relief"].)[6]

Many courts have concluded that the presence of such a federally unauthorized damages claim is inconsistent with the notion that the plaintiff is asserting a claim arising under federal law. For example, in *Mays v. City of Flint, Mich.*, 871 F.3d 437 (6th Cir. 2017), the plaintiffs sued the City of Flint and state officials in Michigan state court "asserting various state-law tort claims" stemming from unsafe drinking water. *Id.* at 440-41. The defendants "argue[d] . . . that they [were] entitled to removal under 28 U.S.C. § 1441" and the *Grable/Gunn* factors. *Id.* at 449. In the complaint, the plaintiffs alleged "state-law claims of gross negligence, fraud, assault and battery, and intentional infliction of emotional distress," and the defendants argued that the case met "all of the requirements for removal under 28 U.S.C. § 1441 because the complaint allege[d] that the [defendants] breached duties to the [p]laintiffs that were based on the SDWA and the" EPA's Lead and Copper Rule ("LCR"). *Id.* The Sixth Circuit, addressing the third *Grable/Gunn* factor, stated that "the Supreme has held that, when a plaintiff's complaint raises garden-variety tort claims, the presence of a claimed violation of a federal statute as an element of a state cause of action is insufficiently 'substantial' to confer federal-question jurisdiction." *Id.* (cleaned up). The court held that "where Congress has not created a private cause of action for violations of a federal statute, there is less likely to be a substantial interest in favor of removal. *And there is no private right of action for damages arising from a violation of the SDWA or the LCR.*" *Id.* at 450 (emphasis added). Accordingly, the court "conclude[d] that removal under 28 U.S.C. § 1441 [was] inappropriate." *Id.*

Similarly, in *Harding-Wright v. D.C. Water & Sewer Auth.*, 350 F. Supp. 2d 102

---

[6] To the extent Counts Three and Four seek declaratory and/or injunctive relief (as opposed to damages), the SDWA does authorize private claims for such relief once certain jurisdictional requirements are met. 42 U.S.C. § 300j-8. However, as explained in the analysis regarding Counts One and Two *infra*, those jurisdictional requirements have not been satisfied here.

- 14 -

(D.D.C. 2005), the plaintiffs brought a "putative class action against the District of Columbia Water and Sewer Authority," alleging that it "failed to provide safe drinking water to the residences, offices, and schools of the District of Columbia." *Id.* at 104. The plaintiffs asserted claims for "negligence, unfair and deceptive trade practices, breach of contract, and unjust enrichment, seeking declaratory judgment and compensatory and punitive damages." *Id.* Although the plaintiffs' initial complaint sought declaratory, injunctive, and compensatory relief, the court later "dismissed plaintiff's claims for injunctive relief." *Id.* After the defendants removed the action to federal court, the plaintiffs sought remand. *Id.* In addressing whether the plaintiffs' state-law claims for unfair or deceptive trade practices, breach of contract, and unjust enrichment arose under federal law,[7] the district court emphasized that, "[u]nder *Merrell Dow*, a congressional determination that there should be no federal remedy for the violation of a federal statute is tantamount to a congressional conclusion that the presence of a claimed violation of the statute as an element of a state cause of action is insufficiently 'substantial' to confer federal-question jurisdiction." *Id.* at 106 (cleaned up). The court acknowledged that the SDWA "does authorize private party lawsuits against any violator of the Act or its requirements" but emphasized that the SDWA "does not provide any federal right of action for the recovery of compensatory damages." *Id.* at 107. The court held that "[b]ecause the remedy plaintiffs seek is unavailable under federal law, a private cause of action under *Merrell Dow* does not, in truth, exist." *Id.* (cleaned up).[8] Thus, the court remanded to state

[7] The court held that the plaintiffs' negligence and negligence *per se* claim did not arise under federal law based on an "alternative theory" analysis, which is addressed in later portions of this order.

[8] The court also noted that the SDWA "preserves the right of individuals to pursue state remedies." *Id.* at 107 (cleaned up). Specifically, the court emphasized language in 42 U.S.C. § 300j-8(e) that provides: "Nothing in this section shall restrict any right which any person (or class of persons) may have under any statute or common law to seek enforcement of any requirement prescribed by or under this subchapter or to seek any other relief." *Id.* The court held that "[a]gainst this explicit pronouncement preserving the option of state law remedies, including compensatory damages actions unavailable under federal law, plaintiffs' mere citation of a federal statute which provides for a private remedy is simply not enough to show congressional intent that the federal courts should exercise jurisdiction over plaintiffs' state law claims." *Id.* (cleaned up).

court.  *Id.* at 108.

As yet another example, in *Hussey v. Total Env't Sols., Inc.*, 2015 WL 7282073 (W.D. La. 2015), the plaintiffs filed a "Petition For Damages And/Or Class Action" in Louisiana state court against Total Environmental Solutions Inc. ("TESI").  *Id.* at *1.  The "[p]laintiffs allege[d] that from May 2, 2013 to February 6, 2014, TESI's Trewhill Subdivision Water System was determined to have violated the [EPA's] rules pertaining to disinfectant byproduct contaminants on multiple occasions."  *Id.*  The plaintiffs "assert[ed] causes of action in state law negligence for various personal injuries, damages, [and] other relief including medical monitoring."  *Id.* (cleaned up).  TESI removed the action to federal court, arguing "that while [the plaintiffs] did not identify the specific regulations of the EPA which TESI allegedly violated, the [SDWA] governs the conduct of TESI relevant to this matter" and thus the SDWA provided the basis for federal-question jurisdiction.  *Id.*  The court disagreed, noting that the "SDWA does not create a private civil action under which damages can be recovered for violation of a provision of the SDWA," although it does "authorize[] citizens' civil actions where the government has failed to pursue an action against a violator."  *Id.* (citing 42 U.S.C. § 300j-8(a)(1)).

And again, in *Mulcahey v. Columbia Organic Chemicals Co., Inc.*, 29 F.3d 148 (4th Cir. 1994), the plaintiffs sought "damages and injunctive relief . . . in South Carolina state court alleging that the defendants negligently operated the Drake Street chemical plant by releasing hazardous substances into the soil, air, and groundwater in the vicinity of their property."  *Id.* at 149 (footnote omitted).  The complaint asserted state-law claims for negligence, abnormally dangerous activities, private nuisance, and injunction.  *Id.*  The defendants nevertheless removed the action, arguing that federal-question jurisdiction existed based on paragraph 30 of the complaint, which alleged that the defendants had violated an array of federal environmental statutes.  *Id.* at 150.  The Fourth Circuit acknowledged that, like the SDWA, several of those statutes permit private parties to bring certain types of actions.  *Id.*  Nevertheless, relying on *Merrell Dow*, the court held that "if a federal law does not provide a private right of action, a state law action based on its

violation does not raise a 'substantial' federal question." *Id.* at 152. Because some of the underlying federal statutes did authorized limited federal private rights of action, the court emphasized: "That is not to say that the presence of *any* private federal remedy would in all instances suffice to establish federal question jurisdiction. . . . In instances in which a private federal remedy does exist, the ultimate question under *Merrell Dow* is whether Congress intended that such an action, based on state law but incorporating a violation of federal law, be brought in federal court." *Id.* "Applying the principles set forth in *Merrell Dow* and examining the federal environmental statutes at issue," the court found "no congressional intent that federal question jurisdiction exists in the instant case for several reasons," including that the "compensatory damages remedy sought in the complaint is not available under these environmental statutes at issue." *Id.* The same is true here.

Notably, *Mulcahey* also identified an independent reason (apart from the absence of a federal damages remedy) why the plaintiffs' claims did not arise under federal law. Citing *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800 (1988), the Fourth Circuit explained that "*Christianson* teaches us that, if a claim is supported not only by a theory establishing federal subject matter jurisdiction but also by an alternative theory which would not establish such jurisdiction, then federal subject matter jurisdiction does not exist." *Mulcahey*, 29 F.3d at 153. Applying that principle to the plaintiffs' negligence *per se* claim, the court held:

> Examination of the complaint in the instant case reveals that the negligence *per se* claim citing the federal environmental statutes was only an alternative theory of liability under the Plaintiffs' negligence claim contained in Count I. Even if Columbia Organic was found not to have violated any federal statute, the Plaintiffs might still be entitled to recover under an alternative theory of negligence. For example, paragraph twenty-seven of the complaint also alleges negligence in the violation of state and local environmental laws. Further, the district court admitted that "the federal issues in this case are not essential to the plaintiffs' claims . . . ." In short, negligence *per se* under the federal environmental statutes is only one of the Plaintiffs' numerous theories of recovery, so that the federal issue raised thereby is not substantial pursuant to *Christianson*. Thus, in light of the principles enunciated above, we find that, because the Plaintiffs' alternative theory of negligence *per se* is not "essential" to their negligence theory, no federal subject matter

jurisdiction exists.

*Id.* at 153-54 (citations and footnote omitted).[9]  *See also Nevada v. Bank of Am. Corp.*, 672 F.3d 661, 674-75 (9th Cir. 2012) (where the complaint alleged that the defendant "violated Nevada's [Deceptive Trade Practices Act] through numerous misrepresentations, some about the [federal Home Affordable Mortgage Program], and some which also violate the [federal Fair Debt Collection Practices Act]," holding that the claim did not necessarily raise a substantial issue of federal law).

The same is true for Count Three.  Although Defendants seek to characterize Count Three as a claim for negligence *per se*, that characterization is not quite accurate—in fact, Count Three is simply a negligence claim.  True, the header to Count Three seems to use the phrases "Operational Negligence" and "Negligence *Per Se*" interchangeably, but later portions of Count Three clarify that "[t]o the extent the Court concludes negligence *per se* doctrine does not apply on these facts, the same statutes and regulations are pleaded as admissible evidence of the applicable standard of care."  (Doc. 1-8 ¶ 446.)   This clarification is consistent with Arizona law, under which negligence *per se* is simply one of several theories a plaintiff may invoke when seeking to prevail on a negligence claim: "Negligence per se is not a cause of action separate from common law negligence.  It is a doctrine under which a plaintiff can establish the duty and breach elements of a negligence claim based on a violation of a statute that supplies the relevant duty of care."  *Craten v. Foster Poultry Farms Inc.*, 305 F. Supp. 3d 1051, 1054 n.2 (D. Ariz. 2018).

This clarification is significant for jurisdictional purposes because the third *Grable/Gunn* factor is not satisfied where a negligence *per se* theory (premised on violations of federal law) is simply an alternative way of proving a negligence claim. *Mulcahey*, 29 F.3d at 153-54.  That is the situation here—under Plaintiffs' alternative theory of negligence, although the alleged violations of Arizona statutes and regulations incorporating federal law would be relevant and admissible evidence, such violations

---

[9]      The Ninth Circuit has cited, with approval, *Mulcahey*'s analysis of *Christianson*. *Rains*, 80 F.3d at 346.

- 18 -

would not be a "necessary element" of the negligence claim. *Rains*, 80 F.3d at 346. Because Count Three "can be supported by alternative and independent theories—one of which is a state law theory and one of which is a federal law theory—federal question jurisdiction does not attach because federal law is not a necessary element of the claim." *Id.*[10]

The same can be said for Count Four. Under Arizona law, "the inquiry in a nuisance claim is not whether the activity allegedly constituting the nuisance is lawful but whether it is reasonable under the circumstances." *Armory Park Neighborhood Ass'n v. Episcopal Cmty. Servs. in Ariz.*, 712 P.2d 914, 922 (Ariz. 1985). According to the Restatement, "[a] public nuisance is an unreasonable interference with a right common to the general public." *Id.* (quoting Restatement (Second) Torts § 821B(1)). "Circumstances that may sustain a holding that an interference with a public right is unreasonable include the following: (a) Whether the conduct involves a significant interference with the public health, the public safety, the public peace, the public comfort or the public convenience, *or* (b) whether the conduct is proscribed by a statute, ordinance or administrative regulation, *or* (c) whether the conduct is of a continuing nature or has produced a permanent or long-lasting effect, and, as the actor knows or has reason to know, has a significant effect upon the public right." *Id.* (quoting Restatement (Second) Torts § 821B(2)). Count Four is thus premised

---

[10] For this reason, several of the nonbinding cases cited by Defendants (Doc. 10 at 11) are distinguishable. In each of those cases, a violation of federal law (or a violation of state law that incorporated federal law) was a required element of the state-law claim at issue. *See, e.g.*, *New York v. Arm or Ally, LLC*, 644 F. Supp. 3d 70, 78-79 (S.D.N.Y. 2022) (where plaintiff's claim was for violation of New York General Business Law § 898-b, and where N.Y. Gen. Bus. Law § 898-b(1) only applies to certain gun products as defined by federal law, the court held that "[i]n order to prevail on its claim that Defendants' conduct falls under General Business Law § 898-b(1)," the plaintiff "*must* demonstrate that the products at issue in this case were 'firearms' or 'component parts' thereof within the meaning of federal law") (emphasis added); *Becnel v. KPMG LLP*, 387 F. Supp. 2d 984, 986 (W.D. Ark. 2005) ("In order for Plaintiffs to prevail on their state law claims, a determination *must* be made as to the legitimacy, or legality, of OPIS and BLIPS. Accordingly, the *only way* to determine whether OPIS and BLIPS are legitimate is to interpret the relevant portions of the United States Code relating to them.") (emphases added); *Schendel v. Ace Mortg. Funding, LLC*, 2012 WL 487874, *2-3 (E.D. Cal. 2012) (where complaint alleged a violation of California Financial Code § 50505, and the only way to violate § 50505 was to violate one of several federal acts, the court held that the plaintiff's § 50505 "claim specifically *requires* the Court to make a determination of whether the defendants violated TILA, HOPEA, and RESPA, which are federal statutes") (emphasis added).

on alternative theories, some of which do not require a violation of incorporated federal law. (*See, e.g.*, Doc. 1-8 ¶ 481 ["Defendant GW-Santa Cruz's acts and omissions created and maintained a condition that constituted a substantial and unreasonable interference with rights common to the general public under the circumstances, including the right to safe, sanitary, and healthful drinking water, and the right to security and comfort within one's community."].) And as noted, "[w]hen a claim can be supported by alternative and independent theories—one of which is a state law theory and one of which is a federal law theory—federal question jurisdiction does not attach because federal law is not a necessary element of the claim." *Rains*, 80 F.3d at 346.[11]

### 2.    *Grable/Gunn* Factor Four

The fourth *Grable/Gunn* factor is also not satisfied in relation to Counts Three and Four. As for Count Three, "[n]egligence tort claims are traditionally regulated by state law." *Keams v. Tempe Tech. Inst., Inc.*, 39 F.3d 222, 226 (9th Cir. 1994). If the mere incorporation of federal standards into state regulations, which in turn form the basis for state-law tort claims, were alone enough to confer federal jurisdiction, federal courts would be overburdened. *Cf. Nevada*, 672 F.3d at 676 ("State courts frequently handle state-law consumer protection suits that refer to or are predicated on standards set forth in federal statutes. Exercising federal question jurisdiction over any state law claim that references a federal consumer protection statute would herald a potentially enormous shift of traditionally state cases into federal courts.") (cleaned up). *See also Mays*, 871 F.3d at 450 (addressing the fourth *Grable/Gunn* factor and emphasizing that "[b]oth *Grable* and *Merrell Dow* noted that allowing federal jurisdiction over typical negligence claims that implicated issues of federal law could dramatically increase the volume of federal litigation over state-law claims").[12]

---

[11]    Moreover, "evaluation of [Plaintiffs'] claim that [Defendants'] activities amount to a public nuisance would require factual determinations, and a state-law claim that is 'fact-bound and situation specific' is not the type of claim for which federal-question jurisdiction lies." *City of Oakland*, 969 F.3d at 907 (citation omitted).

[12]    The Court is also unpersuaded by Defendants' argument that "the Court's interpretation of the federal regulations at issue is bound to have implications beyond this case" and that "[a]ny declaratory or injunctive relief would have the effect of settling

- 20 -

As for Count Four, "[c]laims like negligence, public nuisance, and violations of state specific laws should be decided by a State Court. Thus, allowing this case to proceed in federal court would aggravate the balance of labor between federal and state courts." *Nevada v. Optum, Inc.*, 2025 WL 947041, *5 (D. Nev. 2025).

### 3. Summary

As noted, federal-question jurisdiction only exists if all four *Grable/Gunn* factors are satisfied. *City of Oakland*, 969 F.3d at 904-05. Here, at least the third and fourth *Grable/Gunn* factors are not satisfied in relation to Counts Three and Four. Federal-question jurisdiction is therefore lacking over those claims. This determination makes it unnecessary to address the first and second *Grable/Gunn* factors in relation to Counts Three and Four.

### B.    Counts One and Two

Counts One and Two only seek declaratory and injunctive relief. Specifically, Counts One and Two "seek[] only a declaration of the parties' rights and obligations under existing Arizona law and ADEQ regulations incorporating the RTCR, and a narrowly tailored injunction prohibiting materially delayed or ineffective Tier 1 notice practices and requiring future notices to be issued and communicated in compliance with those existing legal requirements." (Doc. 1-8 ¶¶ 350, 397.) Counts One and Two also expressly disclaim any assertion of a "private right of action directly under RTCR, the [SDWA], or A.R.S. § 36-60(18)." (*Id.* ¶¶ 367, 418.)

---

disputed interpretations of federal regulations, at least for Defendants, which would govern their future conduct in Arizona and perhaps beyond." (Doc. 10 at 13-14.) In *Merrell Dow*, the petitioner argued "that there is a powerful federal interest in seeing that the federal statute is given uniform interpretations, and that federal review is the best way of insuring such uniformity." 478 U.S. at 815. The Supreme Court rejected this argument, holding that "[t]o the extent that petitioner is arguing that state use and interpretation of the FDCA pose a threat to the order and stability of the FDCA regime, petitioner should be arguing, not that federal courts should be able to review and enforce state FDCA-based causes of action as an aspect of federal-question jurisdiction, but that the FDCA pre-empts state-court jurisdiction over the issue in dispute." *Id.* at 815-16. Defendants make no preemption argument here. The Supreme Court also held that the "[p]etitioner's concern about the uniformity of interpretation, moreover, is considerably mitigated by the fact that, even if there is no original district court jurisdiction for these kinds of action, this Court retains power to review the decision of a federal issue in a state cause of action." *Id.* at 816.

As an initial matter, these clarifications are potentially significant because "[t]o obtain declaratory relief in federal court, there must be an independent basis for jurisdiction." *Stock W., Inc. v. Confederated Tribes of the Colville Rsrv.*, 873 F.2d 1221, 1225 (9th Cir. 1989). *See also Ajetunmobi v. Clarion Mortg. Cap., Inc.*, 595 F. App'x 680, 684 (9th Cir. 2014) (same); *Cal. Shock Trauma Air Rescue v. State Comp. Ins. Fund*, 636 F.3d 538, 543 (9th Cir. 2011) ("The operation of the Declaratory Judgment Act is procedural only and does not confer arising under jurisdiction. . . . As CALSTAR is unable to cite *any* case in which there exists federal subject matter jurisdiction over a declaratory judgment claim brought by a private party against another private party, CALSTAR's argument necessarily fails.") (cleaned up). Similarly, "where there is no underlying cause of action over which the district court has primary jurisdiction, it may not entertain an application for an injunction." *Sires v. State of Wash.*, 314 F.2d 883, 884 (9th Cir. 1963). *See also Ajetunmobi*, 595 F. App'x at 684 ("Declaratory and injunctive relief are remedies, not causes of action."); *Warren v. JPMorgan Chase Bank, N.A.*, 2015 WL 11120693, *2 (D. Ariz. 2015) ("Plaintiff's request for declaratory and injunctive relief does not give rise to a federal question. The Court cannot provide remedies for a case over which it does not have subject matter jurisdiction. The Declaratory Judgment Act creates a federal remedy, but is not an independent basis for federal jurisdiction.") (citations omitted).

In *Inciyan v. City of Carlsbad*, 2020 WL 94087 (S.D. Cal. 2020), Inciyan was sued by Langer for, among other things, violations of the Americans with Disabilities Act of 1990 ("ADA") premised on Inciyan's alleged failure to provide ADA-compliant parking spaces at Inciyan's restaurant. *Id.* at *2. Inciyan then filed suit in federal court against the City of Carlsbad, "alleging five causes of action for indemnification, comparative indemnity, declaratory relief, contribution, and an affirmative injunction." *Id.* The district court issued an order to show cause why the action should not be dismissed for lack of subject-matter jurisdiction. *Id.* In response, Inciyan argued that jurisdiction was proper "based on the existence of a federal question" because the relief he was seeking, "including declaratory and injunctive relief, arises under the rights and duties of the parties under the

ADA, which confers federal jurisdiction under 28 U.S.C. § 1331, *because Inciyan [was] praying that the City of Carlsbad be compelled to comply with the ADA.*" *Id.* (cleaned up, emphasis added). The district court rejected that argument, holding that "Inciyan's causes of action for indemnification, comparative indemnity, and contribution are state law causes of action that do not raise a federal question" and that "Inciyan's third and fifth 'causes of action' for declaratory relief and an affirmative injunction, respectively, are not themselves causes of action, but rather remedies available under Mr. Inciyan's first, second, and fourth causes of action." *Id.* at *3. "Because no federal question [was] presented by Mr. Inciyan's underlying causes of action, his requests for injunctive and declaratory relief [were] properly dismissed for lack of subject-matter jurisdiction as well." *Id.*

For similar reasons, there is a strong argument that Counts One and Two "are not themselves causes of action, but rather remedies available under" Counts Three and Four. *Id.* And because the Court has concluded it lacks federal-question jurisdiction over Counts Three and Four, there doesn't appear to be a remaining jurisdictional hook for Counts One and Two.

Nevertheless, Defendants' argument is that even though the FAC disavows that it is asserting a claim under the SDWA, Counts One and Two are, in substance, SDWA claims. This argument has surface appeal, as both Counts seek "a declaration of the parties' rights and obligation under existing Arizona law and ADEQ regulations *incorporating the RTCR*, and a narrowly tailored injunction prohibiting materially delayed or ineffective *Tier 1* notice practices and requiring future notices to be issued and communicated in compliance with those existing legal requirements." (Doc. 1-8 ¶¶ 350, 397 [emphases added].)[13]

Even so, the Supreme Court's decision in *Franchise Tax Board* undermines any suggestion that Counts One and Two qualify as claims arising under federal law sufficient to support federal-question jurisdiction. There, the appellant asserted (1) a request to enforce a tax levy under Cal. Rev. & Tax Code § 18818; and (2) a request for a declaration

---

[13] To the extent Counts Three and Four seek declaratory/injunctive relief (as opposed to damages), the analysis in this section applies with equal force.

of the parties' rights under California's Declaratory Judgment Act. 463 U.S. at 13. As relevant here, the appellees argued that the appellant's "causes of action" were, "in substance, federal claims." *Id.* at 22.[14] The Court noted that "[a]lthough we have often repeated that the party who brings the suit is master to decide what law he will rely upon, it is an independent corollary of the well-pleaded complaint rule that a plaintiff may not defeat removal by omitting to plead necessary federal questions in a complaint." *Id.* (cleaned up). The Court also noted that *Avco Corp. v. Aero Lodge No. 735, Int'l Assn. of Machinists*, 390 U.S. 557 (1968), "stands for the proposition that if a federal cause of action completely preempts a state cause of action any complaint that comes within the scope of the federal cause of action necessarily 'arises under' federal law." *Franchise Tax Bd.*, 463 U.S. at 23-24.[15] Against this backdrop, the Court considered whether each of the appellant's claims "comes within the scope of one of ERISA's causes of action." *Id.* at 25. As for the declaratory judgment claim, the Court concluded that although the "question on which a declaration is sought . . . is undoubtedly a matter of concern under ERISA," the claim did not "arise under" ERISA because "ERISA carefully enumerates the parties entitled to seek relief" and the appellant did not fall within those classes of parties. *Id.* at 26-27.

For similar reasons, Plaintiffs' claims for injunctive and declaratory relief in Counts One and Two cannot be said to "arise under" the SDWA. Although the citizen-suit provision of the SDWA at 42 U.S.C. § 300j-8 does authorize private parties to seek

---

[14]    Defendants make similar arguments here. (Doc. 1 ¶ 4 ["Although pled as state-law causes of action, in substance, Plaintiffs' claims rest on the application of *federal* regulations and standards."]; Doc. 10 at 2 ["Plaintiffs cannot escape the fact that, in substance, their claims depend on, and require the Court to interpret, federal law . . . ."].)

[15]    Defendants do not argue that the SDWA has preemptive effect. In any event, 42 U.S.C. § 300j-8(e) suggests that Congress did not intend for the SDWA to preempt all state-law claims: "Nothing in this section shall restrict any right which any person (or class of persons) may have under any statute or common law to seek enforcement of any requirement prescribed by or under this subchapter or to seek any other relief." *Cf. Franchise Tax Bd.*, 463 U.S. at 24 (holding that § 514(b)(2)(A) of ERISA "makes clear that Congress did not intend to preempt entirely every state cause of action relating to such plans" because "[w]ith important, but express limitations, it states that 'nothing in this subchapter shall be construed to relieve any person from any law of any State which regulates insurance, banking, or securities'").

injunctive relief under certain circumstances, that provision also includes jurisdictional notice requirements that have not been satisfied here.  Thus, Plaintiffs do not qualify as one of the "carefully enumerate[d]" groups that may avail themselves of relief under § 300j-8. *Franchise Tax Bd.*, 463 U.S. at 27.

*Hussey* is in accord.  There, although the plaintiffs sought damages, the court's remand order largely focused on the fact that the defendant, TESI, had "failed to provide any evidence that Plaintiffs have alleged a citizens' suit [under 42 U.S.C. § 300j-8] or have made any attempt to comply with the jurisdictional requirements necessary to bring a citizens' suit."  2015 WL 7282073 at *2.  The court explained:

> [T]he citizens' civil actions provisions of the SDWA, 42 U.S.C. § 300j-8, permit an individual to act as a 'private attorney general' by directly filing a civil suit in federal district court against an SDWA violator if the citizen plaintiff can meet certain subject matter jurisdiction and standing requirements and if, prior to filing the action, the citizen plaintiff has timely performed certain pre-suit notice procedures.  A private individual's ability to enforce a SDWA provision or regulation is limited to purs[u]ing a civil action pursuant to SDWA's citizens' suits authorization.  This authorization is governed by certain procedural requirements and subject matter jurisdiction limitations—i.e. jurisdictional standing, proper notice of the intent to sue properly served on the EPA, prospective defendant and the government of the subject state, at least 60 days prior to the filing of the civil action.

*Id.* at *2.  The court continued:

> TESI bases this Court's federal question jurisdiction on Plaintiffs' allegations that TESI's water treatment services are in violation of the 'EPA' and asserts that Plaintiff's action is brought under the SDWA.  However, with the limited exception of a citizens' suit under 42 U.S.C.A. § 300j-8, the SDWA contains no private right of action.  TESI has failed to provide any evidence that Plaintiffs have alleged a citizens' suit or have made any attempt to comply with the jurisdictional requirements necessary to bring a citizens' suit.

*Id.*

The court further noted that "[i]n *Middlesex County Sewerage Auth. v. Nat'l Sea Clammers Ass'n*, 453 U.S. 1 (1981), the Supreme Court[] analyzed the Clean Water Act [CWA], which has very similar wording to that of the SDWA's citizens' civil action

section." *Id.* (comparing 33 U.S.C. § 1365 with 42 U.S.C. § 300j-8).  The court held that "[t]he Supreme Court's decision in *Sea Clammers* precludes implying a private right of action under any provision of the Clean Water Act other than § 1365, or in this case, the SDWA under § 300j-8." *Id.*  The court also noted that the Sixth Circuit "reached a similar result in *Bd. of Trustees of Painesville Township v. City of Painesvile*, 200 F.3d 396 (6th Cir. 1999), in which [it] affirmed the district court's dismissal of wastewater treatment Clean Water Act case due to lack of subject matter jurisdiction." *Id.* at \*3.  The court quoted from *Painesville*:

> We must affirm the district court's decision dismissing this case because the Supreme Court's decision in [*Middlesex*], clearly precludes us from implying a private right of action against the defendant under the CWA.  Even if plaintiffs' claims were authorized under the statute, we would still affirm because plaintiffs' failure to comply with the statutory notice provisions applicable to citizens suits under the Act deprives us of jurisdiction over their claims.

*Id.*  Accordingly, the *Hussey* court held that "consistent with the above jurisprudence, . . . Plaintiffs' complaint does not arise under federal law" because "Plaintiffs' Petition makes no mention of a citizens' suit under either the SDWA or the CWA," "[n]or is there any evidence that Plaintiff has timely performed the jurisprudential statutory notice provisions." *Id.*  *See also Mulcahey*, 29 F.3d at 152-53 (where plaintiffs were "either procedurally or substantively barred from proceeding under any of the environmental statutes cited in their complaint," "a 'private cause of action' under *Merrell Dow* does not, in truth, exist"); *Waters v. City of Atlanta*, 2021 WL 12219538, \*2 (N.D. Ga. 2021), *report and recommendation adopted*, 2021 WL 12219534 (N.D. Ga. 2021) (ordering remand where plaintiffs brought various state-law negligence claims and sought injunctive relief and damages premised on defendants' supplying them contaminated water, even though complaint alleged violations of the SDWA and CWA, and further holding that "even if this Court were to assume that Plaintiffs did, in fact, raise claims under the SDWA and CWA, those claims still would be subject to dismissal" and "the SDWA and CWA both contain specific notice requirements that constitute additional mandatory prerequisites to citizen

suits under those statutes").

The bottom line is that the FAC expressly disavows that Plaintiffs are bringing a citizen-suit claim under the SDWA and there is no evidence that Plaintiffs have complied, or even attempted to comply, with any of the statutory notice requirements of § 300j-8. Although the Court has not located any binding precedent addressing whether the notice requirements of § 300j-8 are in fact jurisdictional, the Ninth Circuit has held that the notice requirements of the CWA—which use nearly identical language as § 300j-8—are jurisdictional. *See, e.g.*, *Cottonwood Envt'l L. Ctr. v. Edwards*, 86 F.4th 1255, 1264 (9th Cir 2023) ("For a federal court to exercise subject matter jurisdiction over a private CWA claim, the individual or entity bringing the claim 'must give a 60-day notice of intent to sue. In fact, absent that notice, the action is prohibited,' as 'it is a jurisdictional necessity.'") (citation omitted); *Ctr. for Biological Diversity v. Marina Point Dev. Co.*, 566 F.3d 794, 800 (9th Cir. 2009) (referring to the CWA's notice requirement as a "jurisdictional necessity"); *Washington Trout v. McCain Foods, Inc.*, 45 F.3d 1351, 1354-55 (9th Cir. 1995) (affirming dismissal for lack of subject-matter jurisdiction where CWA notice requirements were not satisfied). *See also Covington v. Jefferson Cnty.*, 358 F.3d 626, 636 (9th Cir. 2004) (referring to the notice provision of the RCRA, 42 U.S.C. § 6972(b)(1)(A), which uses nearly identical notice language as § 300j-8, as "jurisdictional" and holding that "[a]bsent compliance with a required notice provision, we lack subject matter jurisdiction to hear the RCRA claims").

IV.   Fees and Costs

Plaintiffs request fees and costs. (Doc. 5 at 16-17; Doc. 11 at 8-11.) Under 28 U.S.C. § 1447(c), "[a]n order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." In *Martin v. Franklin Cap. Corp.*, 546 U.S. 132 (2005), the Supreme Court observed that nothing in § 1447(c) "tilt[s] the exercise of discretion in *favor* of fee awards . . . [or] *against* fee awards." *Id.* at 138. Thus, "the standard for awarding fees should turn on the reasonableness of the removal." *Id.* at 141. "Absent unusual circumstances, courts may

award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal.  Conversely, when an objectively reasonable basis exists, fees should be denied." *Id.*

Here, Defendants had an objectively reasonable basis for their removal effort. Although the Court has ruled in Plaintiffs' favor, determining whether a state-law claim "arises under" federal law has been described by one leading treatise as a "vexing issue" that "[t]hrough the years, the lower courts have wrestled with."  Wright & Miller, Federal Practice and Procedure § 3562 (3d ed. 2025).  And the Supreme Court has recognized that there is no "'single, precise, all-embracing' test for jurisdiction over federal issues embedded in state-law claims between nondiverse parties."  *Grable*, 545 U.S. at 314. Given the lack of clarity in this area of the law, the Court cannot say that "the relevant case law clearly foreclosed [Defendants'] basis of removal."  *Lussier v. Dollar Tree Stores, Inc.*, 518 F.3d 1062, 1066 (9th Cir. 2008).  Defendants' jurisdictional arguments may have ultimately proved unsuccessful, "[b]ut removal is not objectively unreasonable solely because the removing party's arguments lack merit, or else attorney's fees would always be awarded whenever remand is granted."  *Id.* at 1065.[16]

…

…

…

…

…

…

…

---

[16]   The Court is unpersuaded by Plaintiffs' reliance on *Wells Fargo Bank NA v. WPT Props. LP*, 2025 WL 3264545 (D. Ariz. 2025), in support of their request for fees.  There, the Court granted the plaintiff's request for attorneys' fees and costs because the defendants' "removal notice failed to disclose 'the actual partners whose citizenship must be identified for purposes of determining whether diversity jurisdiction exists'" and because the defendants failed to rectify the omission in several of their supplemental filings.  *Id.* at *5.  In contrast, Defendants did not omit facts necessary to determine jurisdiction—they simply argued, albeit unsuccessfully, that their interpretation of the law and facts justified removal.

Accordingly,

**IT IS ORDERED** that Plaintiffs' motion to remand (Doc. 5) is **granted**. This action is **remanded** to Pinal County Superior Court.

Dated this 9th day of April, 2026.

Dominic W. Lanza
United States District Judge

- 29 -